UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCELINA MARTINEZ,
     Plaintiff,

vs.                                                                                   No. 1:13-cv-872-JAP/WPL

GUGLIELMO & ASSOCIATES, PLLC,
TRAVIS J. WHITE, ELIZABETH
FRIEDENSTEIN,
     Defendants.

**MEMORANDUM OPINION AND ORDER**

In DEFENDANTS' MOTION TO DISMISS/JUDGMENT ON THE PLEADINGS (Doc. No. 18) (Motion), Defendants Guglielmo & Associates, PLLC (G&A), Travis White, and Elizabeth Friedenstein ask the Court to dismiss Plaintiff's complaint. Defendants argue, *inter alia*, that (1) Plaintiff's lawsuit is an impermissible attempt to have this Court review an unfavorable state court ruling, (2) Plaintiff's claims fail as a matter of law under Fed. R. Civ. P. 12(b)(6), and (3) Plaintiff failed to properly serve Defendants. Plaintiff opposes Defendants' Motion. *See* PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS/JUDGMENT ON THE PLEADINGS (Doc. No. 20) (Response). After considering the briefing, including DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS/JUDGMENT ON THE PLEADINGS (Doc. No. 31) and PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION TO DISMISS SECOND AMENDED ACTION (Doc. No. 71), the Court has decided to grant Defendants' Motion as further described below.

1

## BACKGROUND

### A. Defendants' Collection Efforts

This lawsuit arises out of Defendants' efforts to collect on behalf of Discover Bank (Discover) from Plaintiff a balance allegedly owing on Plaintiff's Discover Card account. *See* SECOND AMENDED ACTION (Doc. No. 41) (second amended complaint) (SAC) ¶ 12. The following facts are taken from the SAC. On July 13, 2012, Defendant G&A sent Plaintiff a letter attempting to collect the debt. *Id.* Around the same time, on July 18, 2012, a representative of G&A telephoned Plaintiff. *Id.* ¶ 13. Plaintiff responded to these communications by sending G&A a letter in which she disputed the debt and requested information about the debt. *Id.* ¶ 14.

Roughly one month later, on August 20, 2012, G&A replied by providing Plaintiff with a copy of her most recent Discover Card statement. *Id.* ¶ 15. Then, on August 24, 2012, G&A mailed a third letter to Plaintiff indicating that it would be filing a lawsuit against Plaintiff if she remained unwilling to pay. *Id.* ¶ 16. Because she was unhappy with these responses and believed G&A had failed to adequately demonstrate its right to collect the Discover debt, Plaintiff sent G&A another letter demanding "bona fide proof" of the debt. *Id.* ¶ 17. At this point, on September 14, 2012, Defendant White, an attorney with G&A, filed a lawsuit against Plaintiff on behalf of Discover in the First Judicial District Court of New Mexico. *Id.* ¶ 18. A default judgment was entered against Plaintiff on November 26, 2012. *Id.* ¶ 20. According to Plaintiff, she was never served with the summons and complaint in the state-court lawsuit and only learned of the lawsuit after the entry of default judgment. *Id.* ¶ 19.

### B. Plaintiff's Complaint

While Plaintiff filed her COMPLAINT (Doc. No. 1) in this lawsuit on September 11, 2013, Defendants' Motion is directed at Plaintiff's FIRST AMENDED ACTION (Doc. No. 13)

2

(first amended complaint), which was filed February 3, 2014. In the first amended complaint, Plaintiff alleges causes of action under the Fair Debt Collection Practices Act (FDCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), and the New Mexico Unfair Practices Act (UPA). *Id.* at 1.

Because Plaintiff's first amended complaint does not articulate in detail how Defendants allegedly violated the FDCPA, a statute designed to eliminate a broad range of abusive debt collection practices, the Court will also rely on Plaintiff's Response for guidance in outlining Plaintiff's theories of liability. As the Court understands it, Plaintiff is asserting four separate FDCPA violations: (Claim # 1) Defendants refused to provide specific information requested by Plaintiff and failed to obtain verification of the debt after Plaintiff disputed the debt in violation of 15 U.S.C. § 1692g(b), (Claim # 2) Defendants violated 15 U.S.C. § 1692g(b) by issuing communications that overshadowed the mandatory disclosure of Plaintiff's right to dispute the debt, (Claim # 3) Defendants' July 13, 2012, August 20, 2012, and August 24, 2012 letters to Plaintiff violated 15 U.S.C. § 1692e because these letters were not reviewed by an attorney and contained various misrepresentations concerning the character and legal status of the debt, and (Claim # 4) G&A is not registered in New Mexico as a collection agency in violation of 15 U.S.C. §§ 1692e &1692f.[1]

Plaintiff's RICO claim is based on the same conduct that forms the basis for Plaintiff's FDCPA Claim # 3. Plaintiff asserts that Defendants' July 2012 and August 2012

---

[1] Although Plaintiff's first amended complaint and Plaintiff's SAC do not contain any allegations about G&A's unregistered status, Plaintiff extensively briefs the issue. The Court will address this claim in order to expedite the lawsuit and explain why it would be futile to allow Plaintiff to amend her SAC to include a claim based on G&A's failure to register as a debt collection agency.

3

communications with Plaintiff constitute mail fraud and wire fraud because Defendants attempted to collect a debt from Plaintiff "without proof of a valid debt." Plaintiff never independently explains her UPA claim. Instead, she takes the position that Defendants "have violated both FDCPA and RICO and as such they have violated the NMUPA." Response at 22.

On April 30, 2014, after Defendants filed the Motion, Plaintiff filed the SAC, at the Court's encouragement, detailing how each individual Defendant was involved in G&A's alleged misconduct. However, none of Plaintiff's corrections to the complaint affect Defendants' arguments in favor of dismissal or Plaintiff's arguments against dismissal. In fact, on June 3, 2014, Defendants filed a RENEWED MOTION TO DISMISS SECOND AMENDED ACTION (Doc. No. 61), incorporating by reference the arguments made in the Motion. Thus, the Court will treat Defendants' Motion as a motion to dismiss the SAC.

### C. Service of Process

On April 23, 2014, the Court held a hearing concerning issues of service. At this hearing, the Court extended the time for service, under Fed. R. Civ. P. 4(m), until May 15, 2014. After Plaintiff successfully served Defendant Friedenstein, *see* SUMMONS (Doc. No. 45), the Court granted Plaintiff's request for a short extension to serve Defendants G&A and White, *see* ORDER GRANTING PLAINTIFF'S MOTION TO EXTEND (Doc. No. 46). Plaintiff subsequently served Defendant G&A. *See* SUMMONS (Doc. No. 53). However, Plaintiff failed to serve Defendant White by the Court's May 22, 2014 deadline. Rather than asking for additional time, Plaintiff filed a NOTICE REGARDING ATTEMPTED SERVICE ON DEFENDANT TRAVIS J. WHITE (Doc. No. 54) (Notice), explaining that the Sheriff's Office had made one unsuccessful attempt to serve Defendant White and would make two further attempts to serve Defendant White even though the time for service had passed.

On June 10, 2014, Plaintiff filed a declaration indicating that Defendant White was served with the summons and the complaint. *See* SUMMONS RETURNED EXECUTED (Doc. No. 65). At the June 11, 2014 hearing, Gregory L. Biehler, counsel for Defendant White, argued this service was not timely. As it turns out, Defendant White's position is not detrimental to Plaintiff. If the Court had jurisdiction over Defendant White, it would dismiss the claims against him with prejudice for the same reasons it is dismissing the claims against Defendants Friedenstein and G&A. However, because Defendant White contests jurisdiction on the basis that he was not served by the May 22, 2014 deadline, the Court will dismiss Plaintiff's claims against Defendant White without prejudice.

## DISCUSSION

### A. The Rooker-Feldman Doctrine

The Court will first address Defendants' argument that Plaintiff's claims are barred by the Rooker-Feldman doctrine, a "jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). The Rooker-Feldman doctrine is a "narrow" doctrine, which has recently been reformulated by the Supreme Court out of concern that "courts have on occasion been too eager to apply Rooker-Feldman, thereby overextending its reach." *D.A. Osguthorpe Family P'ship v. Asc Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013).

Under the current iteration of the Rooker-Feldman doctrine, the jurisdictional bar on reviewing state court judgments is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In other words, the

Rooker-Feldman doctrine only bars "a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law." *Campbell*, 682 F.3d at 1283.

A federal lawsuit is not barred by Rooker-Feldman merely because the requested judgment conflicts with a state-court decision. *Id.* at 1282 ("[T]he *Rooker-Feldman* doctrine does not bar an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment."). This is true even if a plaintiff asks a federal court to litigate a matter previously litigated in state court. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293 (internal citation omitted).

Applying these principles to the case at hand, it is clear that none of Plaintiff's claims are barred by the Rooker-Feldman doctrine. Plaintiff does not challenge the state-court judgment obtained by Discover; Plaintiff's claims are completely independent from this judgment and largely arise from debt collection activities that occurred in July and August of 2012 before the state-court lawsuit existed. The Court acknowledges that Plaintiff's FDCPA claims stem, in part, from Defendant's conduct during the state-court lawsuit. For example, Plaintiff attacks Defendants' decision to file a lawsuit before verifying Plaintiff's debt and Defendants' decision to pursue a lawsuit as an unregistered collection agency. Nevertheless, neither of these claims requires this Court to find that the state court wrongfully entered its judgment. Because Plaintiff does not complain of injuries caused by the state-court judgment, the Court has jurisdiction over the lawsuit.

B.  **Standard of Review**

The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court should identify the adequately pleaded factual allegations contained in the complaint, disregarding unsupported legal conclusions in the process. *Id.* at 678. While a complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Next, having identified the adequately pleaded claims, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

C.  **FDCPA**

1.  **Statute of Limitations**

The FDCPA states that actions to enforce it must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here, Plaintiff asserts multiple violations of the FDCPA, which must be "analyzed on an individual basis." *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010). First, because Plaintiff filed this lawsuit on September 11, 2013, Plaintiff's FDCPA claims are clearly barred to the extent that Plaintiff

alleges Defendants violated the FDCPA in the course of communicating with Plaintiff in July and August of 2012. In other words, Plaintiff's FDCPA Claim # 2 and Claim # 3 are barred because these claims are based on alleged deficiencies in Defendants' July 13, 2012, August 20, 2012, and August 24, 2012 letters to Plaintiff. The Court will dismiss these claims with prejudice.

Nonetheless, although Plaintiff's claims based on Defendants' July and August communications are time barred, this does not prevent Plaintiff from pursuing claims based on the debt collection activities of Defendants, such as the filing of the state-court lawsuit, which occurred within the statute of limitations period. *See id.* ("[S]eparate communications can create separate causes of action arising from collection of a single debt."). The Court will therefore consider whether Plaintiff's claims that Defendants improperly filed a lawsuit against Plaintiff without providing requested verification of the debt and without registering as a debt collection agency have legal merit.

### 2. Verification

If a consumer disputes a debt, within 30 days of a debt collector's initial communication, the debt collector must halt all efforts to collect the debt until the debt collector obtains and mails to the consumer "verification of the debt or a copy of a judgment" evidencing the debt. 15 U.S.C. 1692g(b). Plaintiff contends that Defendants violated this provision of the FDCPA by failing "to provide specific information requested in [P]laintiffs' [sic] debt validation letter," Response at 8, a letter which disputed the debt and demanded information regarding CUSIP numbers associated with the original credit application, evidence of the contract between G&A and Discover, and a statement showing "all charges, payments, and credits on the account," SAC ¶ 14. As an initial matter, the Court notes that the FDCPA does not require that debt collectors provide any and all

information in their possession to consumers upon request. A debt collector has satisfied 15 U.S.C. 1692g and may continue collection efforts as long as the debt collector has obtained "verification" of the debt.[2]

Here, Defendants maintain that G&A provided the requisite verification by sending Plaintiff a copy of her most recent Discover statement, before resuming collection efforts, *i.e.* before sending additional collection letters or before filing the state-court lawsuit. While Plaintiff was not satisfied with receipt of this statement, she has not cited to any authority and the Court is not aware of any case law that would support her position that a copy of her Discover statement was insufficient to verify the debt under the FDCPA. To the contrary, a review of the relevant law clearly indicates that a billing statement showing the amount owed constitutes "verification" under the FDCPA. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. . .") (quoted favorably in *Lee v. Cohen, McNeile & Pappas, P.C.*, 520 F. App'x 649, 651 (10th Cir. 2013)).

As the Tenth Circuit explained, § 1692g "is not intended to give a debtor a detailed accounting of debt to be collected. . . verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Maynard*, 401 F. App'x at 396. By obtaining a copy of Plaintiff's most recent

---

[2] It is worth noting that § 1692g "does not require a debt collector to make a verification – a debt collector can simply cease collection efforts if it does not wish to make a verification." *Maynard v. Bryan W. Cannon, P.C.*, 401 F. App'x 389, 396 (10th Cir. 2010).

Discover statement, Defendants satisfied their obligation to verify the debt under the FDCPA. Thus, Plaintiff's FDCPA Claim # 1 fails as a matter of law.

### 3. Registration

Plaintiff also complains that G&A instituted collection efforts against Plaintiff without registering as a collection agency as required under the New Mexico Collection Agency Regulatory Act (CARA), N.M. Stat. Ann. § 61-18A-5. As Plaintiff points out, other judges within the District of New Mexico have acknowledged that failure to register under § 61-18A-5 may support a cause of action under the FDCPA. *Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995) (finding that it was a violation of the FDCPA to engage in collection activity in New Mexico without a license); *Obenauf v. Frontier Fin. Group, Inc.*, 785 F. Supp. 2d 1188, 1200 (D.N.M. 2011) (explaining that "[o]ther courts have held that violations of state licensing laws can amount to violations of the FDCPA.").

However, as the name suggests, the CARA governs the conduct of collection agencies, a term which specifically excludes "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." N.M. Stat. Ann. § 61-18A-2(C)(6). In other words, there is an exemption for lawyers and law firms. Because Defendants were not required to register as a collection agency, there has been no violation of state law and no corresponding violation of the FDCPA.

### D. RICO

Defendants argue that Plaintiff's RICO claim fails in all respects. To state a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 760-761 (10th Cir. 2010). "Racketeering activity" is defined in 18 U.S.C. § 1961 as conduct which violates certain federal statutes, such as conduct

constituting mail fraud or wire fraud. Significantly, a "pattern of racketeering activity" does not arise unless the plaintiff pleads at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5). These predicate acts must "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *Bixler*, 596 F.3d at 761. As the Tenth Circuit has reiterated, RICO "is not aimed at the isolated offender." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009).

Here, Plaintiff appears to admit that she failed to allege any facts that could support a finding that Defendants engaged in at least two separate instances of racketeering activity. Response at 21 ("With regards to defendants' claim that plaintiff failed to plead and prove at least two predicate crimes again, notwithstanding her failure to properly plead these elements in her claim. . ."). Also, besides this admission, Plaintiff's SAC only mentions two closely-related instances of racketeering behavior, a July 2012 letter and a July 2012 telephone call, which Plaintiff claims constitute mail fraud and wire fraud respectively. SAC ¶¶ 12-13. Both of these communications were part of Defendants' attempt to collect payment from Plaintiff on behalf of Discover. As Plaintiff implicitly recognizes, "[a] scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts . . ." *Pitts v. Turner & Boisseau, Chartered*, 850 F.2d 650, 652 (10th Cir. 1988). Without evidence that Defendants engaged in other unrelated instances of racketeering activity, the Court cannot plausibly conclude Defendants engaged in a "pattern" of racketeering activity and must, therefore, dismiss Plaintiff's RICO claim.

Plaintiff argues that the Court should supplement the complaint by considering Defendants' practice of obtaining default judgments and Defendants' history of being sued for FDCPA violations. However, even if reference to these lawsuits was included in the complaint, it would not change the Court's decision. First, there is nothing inherently illegal or fraudulent

about obtaining default judgments. Second, while G&A's legal history suggests that G&A may have a practice of engaging in FDCPA violations, this is not equivalent to showing that Defendants have a history of engaging in racketeering activity. Racketeering activity is specifically limited to certain violations of federal law and does not include FDCPA violations. *See* 18 U.S.C. § 1961(1); *see also Quigley v. Wireless*, No. C-11-6212, 2012 U.S. Dist. LEXIS 25753, at *2-3 (N.D. Cal. Feb. 28, 2012) ("[A] violation of the . . . FDCPA is not a predicate act under the applicable RICO statute."); *Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 926 (E.D. Va. 2006) ("[A]cting in violation of the FDCPA is not" a predicate offense for the purposes of RICO.).

   **E. UPA**

   Plaintiff contends that her UPA claim is based on the same allegations underlying her FDCPA and RICO claims. As Plaintiff recognizes, a defendant is liable for unfair trade practices under the UPA if that defendant (1) knowingly makes a false or misleading representation, (2) in the defendant's regular course of business, (3) in connection with the collection of a debt, (4) and that representation is of the type that would ordinarily tend to deceive. N.M. Stat. Ann. §§ 57-12-2; *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 439 (N.M. Ct. App. 2007). While not entirely clear, it appears Plaintiff is alleging that Defendants violated the UPA by sending Plaintiff letters in July and August of 2012 that contained deceptive and fraudulent statements. However, Plaintiff's SAC does not specify the nature of these misrepresentations. The SAC merely states that Defendants improperly directed Plaintiff to send full payment to G&A

"without proof of a valid debt via a lawful contract." SAC ¶ 12.[3] The Court is at a loss to understand how G&A's alleged failure to prove the validity of the Discover debt constituted a misrepresentation. Because Plaintiff has not clarified the nature of these misrepresentations in the briefing, despite the opportunity to do so, the Court concludes that it would be futile to allow Plaintiff to further amend the SAC. The Court will dismiss Plaintiff's UPA claim with prejudice.

IT IS THEREFORE ORDERED THAT:

1. DEFENDANTS' MOTION TO DISMISS/JUDGMENT ON THE PLEADINGS (Doc. No. 18) is granted.

2. The Court will dismiss Plaintiff's claims against Defendant White without prejudice because Defendant White was never properly served.

3. As for the claims against the remaining defendants, the Court will dismiss Plaintiff's FDCPA claims, Plaintiff's RICO claim, and Plaintiff's UPA claim with prejudice.

*James A. Parker*

SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Elsewhere in the SAC, Plaintiff repeats the allegation that Defendants attempted to collect a debt even though they had not proven its validity. SAC ¶ 13.

13